IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **JOSHUA W. GROFF,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil No.**  15-cv-538-SMY-CJP |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## MEMORANDUM and ORDER

**Yandle, District Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff Joshua Groff is before the Court, represented by counsel, seeking review of the final decision of the Commissioner of Social Security denying him Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI).

## Procedural History

Plaintiff applied for SSI on September 27, 2011 and DIB on October 13, 2011. In both applications, he alleged disability beginning on December 5, 2010. (Tr. 17). After holding an evidentiary hearing, ALJ Bradley Davis denied the application for benefits in a decision dated January 7, 2014. (Tr. 17-25). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed within this Court.

## Issues Raised by Plaintiff

Plaintiff raises the following points:

1. The ALJ failed to give adequate weight to the opinion of treating sources.

2. The ALJ failed to properly assess plaintiff's credibility.

3. The ALJ failed to adequately consider plaintiff's obesity.

4. The Appeals Council failed to consider new and material evidence.

## **Applicable Legal Standards**

To qualify for DIB or SSI a claimant must be disabled within the meaning of the applicable statutes.[1] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3) and 1382c(a)(3)(C). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.  20 C.F.R. §§ 404.1572.

---

[1] The statutes and regulations pertaining to Disability Insurance Benefits (DIB) are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404.  The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416.  For all intents and purposes relevant to this case, the DIB and SSI statutes are identical.  Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations.  Most citations herein are to the DIB regulations out of convenience.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  20 C.F.R. §§ 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.

3

If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Secretary at step five to show that the claimant can perform some other job. *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). See also, *Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001)(Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.  It is important to understand that the scope of judicial review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made.  See, *Books*, 91 F.3d at 977-78 (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Brewer v.*

*Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Davis followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. The ALJ found that plaintiff had severe impairments of obesity, degenerative disc disease, and a history of lymphedema and cellulitis. (Tr. 19). The ALJ further determined that these impairments do not meet or equal a listed impairment. (Tr. 21).

The ALJ found that plaintiff had the residual functional capacity (RFC) to perform work at the sedentary level with physical limitations. (Tr. 21). Based on the testimony of a vocational expert, the ALJ found that plaintiff was not disabled because he was able to perform jobs which existed in significant numbers in the regional and national economies. (Tr. 23-24).

## The Evidentiary Record

The court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. The following summary of the record is directed to the points raised by the plaintiff.

### 1.  Agency Forms

Plaintiff was born on July 30, 1979 and was thirty-one years old on his alleged onset date. (Tr. 129). He was five feet nine inches tall and weighed four hundred and

fifteen pounds. (Tr. 132). He was insured for DIB through December 31, 2013. [2] (Tr. 161). He previously worked as a general laborer in construction from 1994 until 2009. (Tr. 133). He completed high school but had no specialized training or vocational schooling. (Tr. 133).

Plaintiff claimed his lumbar spine impairment; cellulitis in both legs; severe back pain; and right knee impairment limited his ability to work. (Tr. 132). He took Crestor for his high cholesterol, Hydrocodone for back and leg pain, and Lorazepam for anxiety. (Tr. 134).

Plaintiff completed a function report in November 2011. (Tr. 138-150). He lived in a house with family and stated that his lower back and leg pain prevented him from performing normal activity. (Tr. 138). He got dressed while sitting on his bed and kept his shoes tied so he could slip them on. (Tr. 139). He did not prepare his own meals because his back hurt when he stood at the stove. The owner of the house where he stayed cooked his meals. The only household chore plaintiff performed was doing his laundry once a week for five to ten minutes. (Tr. 140). He occasionally went outside and was able to drive a car. He shopped for his personal care products, clothing, and medications in the store, online, by phone, and by mail. He did not go to the store often but when he did it took a while because he had to sit on provided benches to rest his back. Plaintiff stated he could handle his finances. (Tr. 141).

---

[2] The date last insured is relevant to the claim for DIB, but not the claim for SSI.  See, 42 U.S.C. §§ 423(c) & 1382(a).

Plaintiff stated he enjoyed hunting, camping, fishing, four-wheeling, shooting, playing video games, and watching television. His conditions made him unable to perform most of these activities except watching television and playing video games. He occasionally talked to and visited with his friends but he typically stayed at home to do so. (Tr. 142).

Plaintiff claimed he had difficulty lifting, bending, standing, walking, sitting, climbing stairs, and completing tasks. He explained that stairs hurt his back; sitting caused his legs to swell; standing hurt his back and legs; bending hurt his back; lifting hurt his back; and walking hurt his back and legs. He could only walk a short distance before needing to stop and rest and his pain levels determined how long he could pay attention. (Tr. 143). He got along with authority figures and could handle stress and changes in routine moderately well. (Tr. 144).

## 2. Evidentiary Hearing

Plaintiff was represented by counsel at the evidentiary hearing on December 17, 2013.[3] (Tr. 32). At the time of the hearing, plaintiff weighed three hundred and eighty pounds, but in 2011 he was up to four hundred and fifty pounds. (Tr. 35). On a typical day, plaintiff would wake up and watch television or play a video game with his legs elevated. He lived with his sister and would sometimes accompany her to the store so that he could get out of the house, but he would not leave the car. His sister cooked for him and did most of the household chores.  Occasionally he would do his own laundry

---

[3] The ALJ's opinion states that plaintiff was represented by a non-attorney representative, Mario Davila, at the hearing. (Tr. 17).  However, the record indicates that plaintiff was represented by attorney Kelly Staley, an employee of Binder & Binder. (Tr. 32).

or make himself something to drink. (Tr. 41). He could drive to his appointments with his doctors and other short distances. (Tr. 42).

Plaintiff last worked as a laborer in 2009 and 2010. (Tr. 37-38). He testified that he was laid off as a result of the economy and his leg issues. (Tr. 36-37). His father was his boss so he was allowed to rest more than other individuals at his workplace. (Tr. 37). He stated that since 2010 his symptoms were about the same if not a little worse. His legs were swelling the same amount but he had infections more frequently. (Tr. 38). He testified that when he had an infection his legs would swell to twice their normal size and it would take about a week for them to return to normal. (Tr. 39). His doctors indicated exercise, elevating his legs, and taking his medications were his best treatment options. Plaintiff indicated exercising was very difficult due to his back problems. (Tr. 39).

One of plaintiff's physicians prescribed him medication for anxiety because plaintiff could not sleep due to having no income and being unable to work. (Tr. 42). He regularly took the medication for a few months and thereafter only took it on an as needed basis. (Tr. 42-43). He did not have difficulty being around others and felt his anxiety was a result of his inability to sleep. (Tr. 43).

A vocational expert (VE) also testified. (Tr. 43-46). The ALJ asked the VE a hypothetical that comported with the ultimate RFC assessment, that is, a person with plaintiff's age and work history who was able to perform work at the sedentary level. The person should avoid working around hazards like unprotected heights or

dangerous or moving machinery, and could only occasionally stoop, kneel, crouch, crawl, or climb stairs. (Tr. 44-45).

The VE testified that this person could not perform any of plaintiff's past relevant work. (Tr. 45). However, he could perform jobs that exist in significant numbers in the national economy. Examples of such jobs are sedentary small product assembler, telemarketer, and cashier. (Tr. 45-46). The VE testified that if the individual needed to elevate his legs at waist level occasionally or up to a third of the workday it would eliminate all possible work. (Tr. 46).

### 3. Medical Evidence

Plaintiff's treatment history for low back pain began in February 2011 with Dr. Robert Ayers. (Tr. 244-45). Dr. Ayers noted plaintiff had swelling in his right knee and marked obesity as plaintiff weighed four hundred pounds. (Tr. 244). Later that month, plaintiff saw orthopedist Dr. Timothy Penn upon referral from Dr. Ayers. (Tr. 191). Dr. Penn's notes indicate plaintiff had a history of cellulitis and extremity swelling. Plaintiff moved with difficulty and had fullness in the soft tissue of his thigh that appeared to be fluid collection. An X-ray showed plaintiff had mild medial joint space narrowing of the right knee but no signs of fracture, dislocation, or bone destruction. (Tr. 191).  An MRI in March 2011 showed extensive edema in the subcutaneous tissue in plaintiff's right knee. (Tr. 190). Dr. Penn reviewed the MRI and determined plaintiff's symptoms were due to chronic lymphedema caused by his weight. Dr. Penn opined that plaintiff needed to lose a significant amount of weight to improve his symptoms. (Tr. 189).

In March 2011, plaintiff returned to Dr. Ayers for left shoulder pain. (Tr. 247-48). Plaintiff had an X-ray of his shoulder and his back during this visit. (Tr. 186-88). The X-ray of his spine showed minimal degenerative changes and a normal left shoulder. (Tr. 186-88). Plaintiff returned to Dr. Ayers in May 2011 for recurrent cellulitis in both legs and was prescribed an antibiotic. (Tr. 254-55). In August 2011, plaintiff presented to Dr. Ayers with an ear ache and depression. (Tr. 251). Dr. Ayers wrote a letter that month indicating he treated plaintiff for severe obesity and that it rendered plaintiff unable to work. (Tr. 199).

Plaintiff returned to Dr. Ayers in November 2011 for a routine follow-up and Dr. Ayers opined plaintiff had symptoms associated with anxiety. (Tr. 252). Plaintiff's final notes with Dr. Ayers are from August 2012. Plaintiff reported back pain and his recorded weight was four hundred and thirty pounds. (Tr. 237). He had lumbar spine tenderness and stated he could not afford testing due to lack of insurance. Dr. Ayers diagnosed plaintiff with obesity and lumbago. (Tr. 238).

### 4.  Opinion of Treating Physician

In November 2011, Dr. Ayers completed an impairment questionnaire as to plaintiff's capabilities. (Tr. 257-65). Dr. Ayers diagnosed plaintiff with hypertension, degenerative disc disease, obesity, and leg cellulitis and his prognosis was fair. (Tr. 257). Plaintiff's primary symptoms were swelling in the legs, and daily leg and back pain. Dr. Ayers cited his record reports for evidence supporting his findings. (Tr. 258). Plaintiff's pain was an eight out of ten as moderately severe. (Tr. 259). Dr. Ayers opined that plaintiff could sit for four hours out of an eight hour day and could stand or walk for

two hours of an eight hour day. He felt it would be necessary or medically recommended for plaintiff not to sit continuously in a work setting. (Tr. 259). Plaintiff could frequently lift or carry up to five pounds, and occasionally lift or carry all other weights. (Tr. 260).

Dr. Ayers noted that plaintiff was not a malingerer and was capable of moderate work related stress. (Tr. 263). Dr. Ayers felt that plaintiff's pain, fatigue, or other symptoms would periodically interfere with his attention and concentration. (Tr. 263). He also stated that plaintiff would have good and bad days and plaintiff was prone to infections due to cellulitis. Dr. Ayers estimated plaintiff would be absent from work, on average, two to three times a monthly due to his impairments or treatment. (Tr. 264).

Dr. Ayers also wrote a letter with regard to plaintiff's capabilities. (Tr. 199). In the letter Dr. Ayers states that plaintiff suffered from severe obesity and is unable to work due to the daily pressure of his weight. Plaintiff also suffered from edema in his bilateral lower extremities as a result of his weight. Dr. Ayers stated that it was his professional opinion that plaintiff was not stable enough to work due to his weight. (Tr. 199).

### 5.  Consultative Examinations

In December 2011, plaintiff had a physical consultative examination with state agency physician Raymond Leung, M.D. (Tr. 203-06). Dr. Leung noted that plaintiff walked with a minimal waddle and was able to walk fifty feed unassisted. Plaintiff could tandem walk, hop, heel walk, and squat. Plaintiff's straight leg raising bilaterally was to 40 degrees. Dr. Leung's clinical impressions were low back pain with forward

flexion in the lumbar spine limited to 85 degrees; right knee pain due to a mass on his inner knee, cellulitis, and flexion limited to 130 degrees; and morbid obesity as plaintiff weighed close to four hundred and fifty pounds. (Tr. 205).

### 6.  RFC Assessment

State agency physician B. Rock Oh, M.D. assessed plaintiff's physical residual functional capacity (RFC) in December 2011. (Tr. 225-31). He reviewed medical records but did not examine plaintiff. He opined that plaintiff could occasionally and frequently carry ten pounds or less. He felt plaintiff could stand or walk for a total of two hours in an eight hour workday and sit for about six hours in an eight hour workday. (Tr. 225). Plaintiff could occasionally climb ramps, stairs, ladders, ropes, or scaffolds; balance; stoop; kneel; crouch; or crawl. (Tr. 226). He also felt plaintiff should avoid concentrated exposure of hazards such as machinery or heights. (Tr. 228). Dr. Oh based these findings on plaintiff's BMI of 66.4, straight leg raise of 40 degrees, limited range of motion in the lumbar spine, and decreased forward and knee flexion bilaterally. (Tr. 225).

### 7.  Records Not Before the ALJ

The transcript contains medical records that were not before the ALJ. As of the time the ALJ issued his decision, the medical records consisted of Exhibits 1F through 14F, i.e., Tr. 183 through 322. *See*, List of Exhibits attached to ALJ's decision, Tr. 26-29. Plaintiff submitted the additional records to the Appeals Council in connection with his request for review. *See*, AC Exhibits List, Tr. 5. Thus, the medical records at Tr. 323-363, designated by the Appeals Council as Exhibits 15F, 16F, and 17F were not before the

ALJ and cannot be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. Records "submitted for the first time to the Appeals Council, though technically a part of the administrative record, cannot be used as a basis for a finding of reversible error." *Luna v. Shalala*, 22 F3d 687, 689 (7th Cir. 1994). *See also*, *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008); *Rice v. Barnhart*, 384 F.3d 363, 366, n. 2 (7th Cir. 2004).

## Analysis

Plaintiff contends that the ALJ failed to give adequate weight to the opinion of treating sources, failed to properly assess plaintiff's credibility, failed to adequately consider plaintiff's obesity, and that the Appeals Council failed to consider new and material evidence. As plaintiff relies in part on his testimony, the Court will first consider his argument regarding the ALJ's credibility analysis.

The credibility findings of the ALJ are to be accorded deference, particularly in view of the ALJ's opportunity to observe the witness. *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000). Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding." *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily

activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, at *3.

The ALJ is required to give "specific reasons" for his credibility findings. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). It is not enough just to describe the plaintiff's testimony; the ALJ must analyze the evidence. *Ibid.* See also, *Terry v. Astrue*, 580 F.3d 471, 478 (7th Cir., 2009)(The ALJ "must justify the credibility finding with specific reasons supported by the record."). If the adverse credibility finding is premised on inconsistencies between plaintiff's statements and other evidence in the record, the ALJ must identify and explain those inconsistencies. *Zurawski*, 245 F.3d at 887.

First, the ALJ noted plaintiff's annual earnings and stated that his "work history does not lend much credibility to the claimant in his allegations about his work-related limitations." (Tr. 22). Plaintiff argues that his modest work history is consistent with his long history of medical problems. He states that there is nothing to suggest he would not work if he was able and that his doctors stated he was not a malingerer. (Tr. 262). The Commissioner argues that it was reasonable for the ALJ to infer that plaintiff's poor work history undercut his allegations of work-related limitations. This Court agrees with the Commissioner on this point. ALJs are instructed to consider work history, and a poor work history can undermine a claimant's credibility. *Simila*, 573 F.3d at 520.

Second, the ALJ looked at plaintiff's activities of daily living. The Seventh Circuit has repeatedly held it is appropriate to consider these activities but it should be done with caution. The ability to perform daily tasks "does not necessarily translate into an

ability to work full-time." *Roddy v. Astrue*, 705 F.3d 631, 639 (7th Cir. 2013). Plaintiff's daily activities can all be done with significant limitations and do not indicate he can complete an entire workday or workweek. The ALJ noted that plaintiff reported he could do laundry, drive, shop for groceries, and manage his money.

While the ALJ does not state that he believes these activities make plaintiff able to work, he fails to explain how they harm his credibility. Plaintiff testified that he did most of his activities at home with his legs elevated. He stated that his sister did all the cooking and most of the laundry. (Tr. 41). Additionally, he only drove short distances. (Tr. 42). The ALJ was required to explain how any of these reported activities were not supported by the medical evidence. *Bjornson v. Astrue,* 671 F.3d 670, 647 (7th Cir. 2012)(Stating an ALJ "must explain perceived inconsistencies between a plaintiff's activities and the medical evidence."). His failure to do so is incorrect.

Next, the ALJ looked at plaintiff's function report where the ALJ claims he stated he did not take medication. (Tr. 145). The ALJ concluded that this treatment record was inconsistent with his allegations. (Tr. 22). This assessment is inaccurate. The function report does not require plaintiff to list all the medications he was taking, but rather only the ones that caused side effects. The function report states clearly "Do not list all the medications you take. List only medications that cause side effects." (Tr. 145). Plaintiff never claimed his medication caused side effects, and therefore his failure to list a medication in this portion of his function report is in line with his medical records.

Finally, the ALJ's analysis of plaintiff's medical records does little more than recite the facts. The ALJ does not state how the medical records show that plaintiff's

overall treatment history and the objective medical evidence fails to support plaintiff's allegations. He merely restates the record, which the Seventh Circuit has held is error. The ALJ must articulate what particular evidence was inconsistent and why. *See Clifford v. Apfel*, 227 F.3d 863, 870-871 (7th Cir. 2000). Additionally, the ALJ must build a logical bridge to his conclusions which requires more than a mere recitation of the record. See, *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir.2005); *Barrett v. Barnhart*, 355 F.3d 1065, 1068 (7th Cir.2004), *Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011). The ALJ does not analyze the record beyond repeating what it says. While the ALJ correctly looked at plaintiff's work history, the rest of his credibility analysis is fundamentally flawed and it cannot be upheld.

The Court then turns to plaintiff's argument that the ALJ failed to appropriately consider the opinion of Dr. Ayers. A treating doctor's medical opinion is entitled to controlling weight only where it is supported by medical evidence and is not inconsistent with other substantial evidence in the record. *Clifford*, 227 F.3d 863; *Zurawski*, 245 F.3d 881. The version of 20 C.F.R. §404.1527(c)(2) in effect at the time of the ALJ's decision states:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give

it controlling weight. [Emphasis added]

It must be noted that, "while the treating physician's opinion is important, it is not the final word on a claimant's disability." *Books v. Chater*, 91 F.3d 972, 979 (7th Cir. 1996)(internal citation omitted). It is the function of the ALJ to weigh the medical evidence, applying the factors set forth in §404.1527. Supportability and consistency are two important factors to be considered in weighing medical opinions.  See, 20 C.F.R. §404.1527(c). In a nutshell, "[t]he regulations state that an ALJ must give a treating physician's opinion controlling weight if two conditions are met: (1) the opinion is supported by 'medically acceptable clinical and laboratory diagnostic techniques[,]' and (2) it is 'not inconsistent' with substantial evidence in the record." *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010), citing §404.1527(d).

Thus, the ALJ can properly give less weight to a treating doctor's medical opinion if it is inconsistent with the opinion of a consulting physician, internally inconsistent, or inconsistent with other evidence in the record. *Henke v. Astrue*, 498 Fed.Appx. 636, 639 (7th Cir. 2012); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). If the ALJ determines that a treating doctor's opinion is not entitled to controlling weight, he must apply the §404.1527(d) factors to determine what weight to give it. *Campbell v. Astrue*, 627 F.3d 299, 308 (7th Cir. 2010). Further, in light of the deferential standard of judicial review, the ALJ is required only to "minimally articulate" his reasons for accepting or rejecting evidence, a standard which the Seventh Circuit has characterized as "lax." *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008); *Elder v. Astrue*, 529 F.3d 408,

415 (7th Cir. 2008).

The ALJ looked at Dr. Ayers' impairment questionnaire and letter regarding plaintiff's capabilities and this Court will evaluate both assessments separately. The ALJ first evaluated the letter Dr. Ayers wrote, stating that it was given little weight because it is not a functional opinion on what plaintiff could do, the opinion was based on plaintiff's weight and not a medically determinable abnormality in combination with his weight, and that it was not consistent with examinations that revealed minimal problems. (Tr. 23). This reasoning, while short and with little evidentiary support, seems to meet the "lax" standard the Seventh Circuit has created as he articulated his rationale and applied some of the factors.

However, when assessing Dr. Ayers' questionnaire, the ALJ did not provide the same reasoning and broadly stated that "there are is [sic] clinical or radiographic evidence to support such a disabling level of limitation. Therefore, his opinion is given little weight." This Court agrees with plaintiff that the ALJ's one sentence discussion of the impairment questionnaire from Dr. Ayers was insufficient. Merely stating that the opinion was unsupported by sufficient clinical and diagnostic evidence without identifying the inconsistent evidence is not enough.

The ALJ did not address any of factors that are to be considered when weighing a medical opinion. Dr. Ayers treated plaintiff regularly, his treatment was focused on plaintiff's physical impairments, and he provided support for his opinions. He stated that there was no clinical or radiographic evidence to support the limitations, but Dr. Ayers noted that his opinions were based on evidence of decreased range of motion in

the spine and neck as well as his findings found within his treatment records. (Tr. 257-58). His treatment records show reduced range of motion, lumbar spine tenderness, cellulitis, and lymphedema. (Tr. 189, 190, 191, 199, 236, 255, 292, 346, 347, 348). The ALJ does not address any of these points.

The Commissioner argues that if the ALJ's opinion is read as a whole it is clear that the objective medical evidence supported his findings and the analysis should not be confined to the portion explicitly directed at Dr. Ayers' opinion. However, the ALJ's opinion fails to analyze any of the information beyond a statement of the facts found within the record. As stated above, the ALJ must build a logical bridge to his conclusions which requires more than a mere recitation of the record. See, *Briscoe ex rel. Taylor,* 425 F.3d at 352; *Barrett,* 355 F.3d at 1068, *Scott,* 647 F.3d at 740. ALJ Davis' failure to form that logical bridge in evaluating Dr. Ayers' opinions is error.

The Commissioner also states that even if the ALJ had stated the amount of time that plaintiff and Dr. Ayers had a treatment relationship it would not have changed the outcome. She also states that even though it was not articulated in the opinion, the RFC was consistent with state agency physician B. Rock Oh's analysis. The Commissioner errs here by advancing arguments not relied upon by the ALJ and, in turn, violates the *Chenery* doctrine. See, *SEC v. Chenery Corporation*, 318 U.S. 80 (1943). "Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace." *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012).

Next the Court turns to plaintiff's arguments regarding his RFC, namely that the

ALJ failed to adequately consider his obesity. An RFC is "the most you can still do despite your limitations."  20 C.F.R. §1545(a). In assessing RFC, the ALJ is required to consider all of the claimant's "medically determinable impairments and all relevant evidence in the record." ***Ibid***. Obviously, the ALJ cannot be faulted for omitting alleged limitations that are not supported by the record.

Plaintiff states that the ALJ failed to indicate if plaintiff's obesity was considered in making the RFC finding. He states that his body mass index ("BMI") has been as high as 66.4 and as a result; he has the most extreme level of obesity according to the Social Security Administration. SSR 02-1p. Plaintiff argues that his obesity has a clear impact on his leg and back pain, and limits his ability to work. The Commissioner notes that plaintiff's body status, standing alone, is not relevant in assessing his RFC but should be considered in combination with other mental and physical impairments when making an RFC finding. SSR 02-1p; SSR 96-9p. The Commissioner argues that the ALJ factored obesity into his analysis when he mentioned that it was a severe impairment, and more analysis was unnecessary.

The ALJ's RFC analysis states that "the overall objective medical evidence fails to show that the claimant was unable to walk at all or that the claimant needed to levitate [sic] his lower extremities as often as the claimant alleged." He goes on to note specific portions of the record where plaintiff had a "minimal waddle" and he did not have edema. The ALJ states that while plaintiff had a spinal abnormality, it does not restrict plaintiff as much as he alleged. (Tr. 23).

The ALJ almost fails to mention plaintiff's obesity entirely. He states that it is a

severe impairment, but does not discuss how plaintiff's obesity was factored into his RFC assessment or how it could impact plaintiff's other medically determinable impairments. He does not discuss it when listing plaintiff's medical records. The ALJ peripherally mentions that plaintiff's weight only matters in combination with other impairments while discussing Dr. Ayers' letter, but he does not analyze this in any way. He simply states the rule from SSRs 96-8p and 02-1p and does not state how it was factored into his analysis.

The Seventh Circuit has held that while it is error not to mention obesity when determining an RFC, "[t]his error could conceivably be harmless if the ALJ indirectly took obesity into account by adopting limitations suggested by physicians who were aware of or discussed [plaintiff's] obesity." *Arnett v. Astrue*, 676 F.3d 586, 593 (7th Cir. 2012). Unfortunately, the ALJ's RFC assessment fails to include any limitations regarding plaintiff's degenerative disc disease, lymphedema, or cellulitis. All of these impairments were well documented, directly related to plaintiff's obesity, and had limitations that plaintiff's treating physician noted within his opinion evidence and medical records. (Tr. 189, 190, 191, 199, 236, 255, 292, 346, 347, 348). Considering plaintiff's size and how his obesity clearly impacts his physical capabilities, this omission is error.

Finally, the Court turns first to plaintiff's fourth point regarding the records he submitted to the Appeals Council. The records consist of medical records from Dr. Susan Reynolds from April 2013 through June 2013, a prescription for Norco in January 2014, and an impairment questionnaire filled out by Dr. Reynolds on January 22, 2014.

(Tr. 346-63). Plaintiff argues that the records are relevant because they are new and material. The Commissioner argues that the records are neither new nor material and the arguments relating to the Appeals Council lack merit. With respect to Appeals Council review, 20 C.F.R. §404.970(b) provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

The decision of the Appeals Council denying review, as opposed to an order refusing to consider additional evidence, is within the discretion of the Appeals Council. It is not the final decision of the Commissioner, and is not subject to judicial review. 42 U.S.C. § 405(g); *Perkins v. Chater*, 107 F.3d 1290, 1294 (7th Cir. 1997). However, the Court may consider the issue of whether an Appeals Council order refusing to consider additional evidence was the result of a mistake of law. *Farrell v. Astrue*, 692 F.3d 767, 770-771 (7th Cir. 2012); *Eads v. Secretary of Dept. of Health and Human Services*, 983 F.2d 815, 817 (7th Cir. 1993). The Seventh Circuit has explained when judicial review is available as follows:

> Our ability to review the Appeals Council's decision in the instant case is dependent on the grounds on which the Council declined to grant plenary review. If the Council determined [plaintiff's] newly submitted evidence was, for whatever reason, not new and material, and therefore deemed the evidence "non-qualifying under the regulation," we retain jurisdiction to review that conclusion for legal error. [internal citations omitted]. However, if the Appeals Council

deemed the evidence new, material, and time-relevant but denied plenary review of the ALJ's decision based on its conclusion that the record—as supplemented—does not demonstrate that the ALJ's decision was "contrary to the weight of the evidence"—the Council's decision not to engage in plenary review is "discretionary and unreviewable." *Perkins*, 107 F.3d at 1294, *Stepp v. Colvin*, 795 F.3d 711, 722 (7th Cir. 2015).

Here, the Appeals Council did not specify whether or not it accepted the evidence as "new, material and time-relevant."  The notice denying review stated only that it considered the additional evidence and "We found that this information does not provide a basis for changing the Administrative Law Judge's decision." (Tr. 1-2). The Seventh Circuit has held that, without more explanation, this "standard boilerplate language" indicates that the Appeals Council rejected the new evidence as "non-qualifying under the regulation." *Stepp*, 795 F.3d at 723, citing *Farrell,* 692 F.3d at 771.

Defendant does not argue that the Appeals Council accepted the new evidence and rendered a discretionary denial of review so as to preclude consideration by this Court of the Appeals Council action.  Rather, she argues that the evidence submitted to the Appeals Council was not qualifying under the regulation because it was neither new nor material.  See, Doc. 16, p. 12.

The ALJ's decision was dated January 7, 2014. The evidence that plaintiff states is new and material consists of treatment notes from Dr. Reynolds dated April 19, 2013 and June 17, 2013, a prescription for Norco written on January 22, 2014, and an impairment questionnaire completed January 22, 2014. Plaintiff contends that evidence is "new" if it was not previously part of the administrative record. This is false. The Seventh Circuit has stated that "evidence is considered 'new' if it was 'not in existence

or available to the claimant at the time of the administrative proceeding.'" *Stepp*, 795 F.3d at 721, citing *Perkins,* 107 F.3d at 1296.

As the Commissioner points out, Dr. Reynolds' April and June treatment notes were not new as they were in existence prior to the ALJ's December 2013 hearing. Additionally, the ALJ gave plaintiff the opportunity to add Dr. Reynolds' notes to the record but plaintiff stated he did not think they provided new or meaningful information. (Tr. 33, 48). Plaintiff had the opportunity to acquire these medical records and add them to the record prior to the ALJ's opinion and chose to exclude them.

Further, the additional records do not appear to be material. The Seventh Circuit has determined that material evidence exists only when "there is a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins*, 107 F.3d at 1296. The records from Dr. Reynolds state that plaintiff's hyperlipidemia was moderate but controlled with medication. (Tr. 355, 359). She opines that plaintiff's back pain was moderate and stable. (Tr. 355). She prescribed Norco for pain, Crestor for plaintiff's cholesterol, and Maxzide to help with fluid retention. (Tr. 358). No portion of these records indicates a new or worsening problem beyond what the records reviewed by the ALJ displayed. Plaintiff's attorney essentially conceded the treatment notes were not material with the statement that the records were "just maintenance" records. (Tr. 33, 48). Therefore, the Court finds the treatment records from Dr. Reynolds found at 17F were neither new, nor material.

The Court now turns to plaintiff's prescription for Norco and Dr. Reynolds' impairment questionnaire. The form she completed was the same questionnaire filled

out by Dr. Ayers and had very similar findings. She stated that plaintiff had severe swelling and lower back pain. (Tr. 346). Dr. Reynolds opined that plaintiff could sit for three to four hours in a normal workday and stand or walk for two hours in a workday. (Tr. 348). She stated plaintiff could frequently lift or carry five pounds, occasionally lift or carry up to twenty pounds, and never lift or carry over twenty pounds. (Tr. 349). The prescription for Norco states that plaintiff should take up to three pills a day as needed. (Tr. 363).

This evidence, on its face, seems to qualify as "new" since it did not exist when the ALJ issued his opinion. However, as the Commissioner notes, the Seventh Circuit directly addressed this issue in *Perkins*, stating that even though a doctor's "evaluations were technically not in existence at the time of the earlier hearing, he based his conclusions entirely on evidence that had long been available. . . this derivative evidence was thus [] 'available' at the time of the earlier proceeding and does not qualify under sentence six as 'new.'" *Perkins*, 107 F.3d at 1296.

Dr. Reynolds' conclusions were based on the visits she had with plaintiff where she noted his back and leg pain. Those records and the conclusions reached in her questionnaire are very similar to Dr. Ayers' records and findings which the ALJ reviewed. The prescription for Norco does not state anything beyond directing plaintiff to take as needed for pain. (Tr. 363). Plaintiff's records that the ALJ reviewed contained evidence that he was prescribed hydrocodone which is a similar narcotic pain killer. (Tr. 236). Therefore, under *Perkins*, this evidence does not qualify as "new" because this information was based on evidence that was essentially "available" prior to the hearing.

*Id.*

However, assuming *arguendo* that this evidence is considered "new" the question of its materiality comes into play. As stated above, much of the information contained within the evaluation was available for the ALJ at the time he issued his opinion. Plaintiff does not describe how this evidence is material beyond stating that it is consistent with opinions from plaintiff's earlier treating physician. As a result, this Court does not believe "there is a reasonable probability that the Commissioner would have reached a different conclusion had the evidence been considered." *Perkins*, 107 F.3d at 1296. Therefore, none of the evidence submitted to the Appeals Council can be deemed new or material and plaintiff's argument on this point fails.

The case must be remanded because of the ALJ's errors in evaluating plaintiff's credibility, weighing Dr. Ayers' opinion, and in forming plaintiff's RFC. The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff is disabled or that he should be awarded benefits.  On the contrary, the Court has not formed any opinions in that regard, and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying Joshua Groff's application for social security disability benefits is **REVERSED and REMANDED** to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence four of **42 U.S.C. §405(g).**

The Clerk of Court is directed to enter judgment in favor of plaintiff.
**IT IS SO ORDERED.**

**DATE:  July 27, 2016.**                    */s/  Staci M. Yandle*
STACI M. YANDLE
DISTRICT JUDGE